JAMES P. KEMP, ESQUIRE
Nevada Bar No. 006375
KEMP & KEMP, ATTORNEYS AT LAW
7435 W. Azure Drive, Suite 110,
Las Vegas, NV 89130
(702) 258-1183 tel./(702) 258-6983 fax
jp@kemp-attorneys.com
Attorney for Plaintiff MALCOLM SHEPHERD

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

* * *

MALCOLM SHEPHERD,
                Plaintiff,

vs.

TESLA, INC., (a.k.a. TESLA MOTORS, INC.) a Delaware Corporation; DOES I-X; and, ROE Business Entities I-X,
                Defendants.

Case No.: 3:25-cv-00137-ART-CSD

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION [ECF No. 13]**

<u>SUMMARY JURY TRIAL DEMANDED IN ACCORDANCE WITH 9 U.S.C.§4</u>

COMES NOW Plaintiff, MALCOLM SHEPHERD, by and through his attorney, JAMES P. KEMP, ESQUIRE, and hereby Opposes the Defendant's Motion to Compel Arbitration [ECF No. 13] on the following grounds:

1. The Defendant, based on publicly available website information, is a contractor of the United States Department of Defense (DoD) and pursuant to "The Franken Amendment", Section 8116 of the Defense Appropriations Act of 2010 and DoD regulations promulgated thereunder, the Defendant presumably agreed to contractual terms and is prohibited by federal law from 1) entering into any forced arbitration agreements requiring ANY of its employees to submit Title VII claims to arbitration, and 2) enforcing any previously existing arbitration agreements such as the June 12, 2020 agreement at issue in this case;

1

2. Pursuant to the doctrines of unclean hands, estoppel, and third-party beneficiary, the court should deny the Motion to Compel Arbitration. Because the court should not compel arbitration, the separate motions to stay the case pending resolution of the Motion to Compel Arbitration and to stay the case pending completion of arbitration should be moot.

This Opposition is made and based upon all pleadings and papers on file herein, the Points and Authorities submitted herewith, and any argument the court may entertain at a hearing on the matter.

DATED this 23rd day of April 2025.

BY  /s/ James P. Kemp
JAMES P. KEMP, ESQ.
Nevada Bar #6375
Attorney for Plaintiff

## POINTS AND AUTHORITIES

### I.  STATEMENT OF FACTS

The Plaintiff has brought several causes of action including claims for discrimination, based on race under Title VII of the Civil Rights Act of 1964 and related Nevada statutes. The Defendant removed the case from state court and has filed motions seeking to compel arbitration, stay the case pending the outcome of the motion seeking to compel arbitration, and a motion seeking to stay the case pending the outcome of arbitration proceedings.

Plaintiff was hired by Defendant on or about June 12, 2020 and his employment was terminated on approximately May 2, 2023. Contained in his offer letter, which Plaintiff accepted, was a forced arbitration agreement that made agreeing to mandatory arbitration a condition of his hiring. Tesla would not have hired him unless he agreed to the arbitration clause.

Defendant TESLA, INC. is a defense contractor with one or more contracts with the U.S. Department of Defense that exceed $1 million. For example, attached hereto as Exhibit 1 is a list by

2

the U.S. Department of Defense of contracts showing that on September 16, 2022 Tesla was awarded a three-year contract, with a value of $7,739,831.00, to supply the Army and Navy with battery power supplies. This Department of Defense contract was in effect at the time Plaintiff's employment at Tesla ended, at the time that his claims in this case arose, and at the time that this civil action was commenced. The Department of Defense contract continues to be in effect now and through September 15, 2025. Ex. 2. Tesla is a defense contractor and as such is subject to the Franken Amendment as set forth below.

The Franken Amendment, set forth hereinbelow, requires all Department of Defense contracts to contain provisions as follows:

- Enter into any agreement with any of its employees or independent contractors that requires, as a condition of employment, that the employee or independent contractor agree to resolve through arbitration any claim under title VII of the Civil Rights Act of 1964 or any tort related to or arising out of sexual assault or harassment, including assault and battery, intentional infliction of emotional distress, false imprisonment, or negligent hiring, supervision, or retention; or
- Take any action to enforce any provision of an existing agreement with an employee or independent contractor that mandates that the employee or independent contractor resolve through arbitration any claim under title VII of the Civil Rights Act of 1964 or any tort related to or arising out of sexual assault or harassment, including assault and battery, intentional infliction of emotional distress, false imprisonment, or negligent hiring, supervision, or retention.

(See Exhibit 2, Defense Department memo from when Franken Amendment was enacted in 2010) By the time the September 16, 2022 contract was entered into by Tesla with the Department of Defense, the Franken Amendment had been in place for 12 years. Accordingly, the clause that prohibits defense contractors from taking any action to enforce a forced arbitration agreements in Title VII employment cases presumably is in the Tesal defense contract of September 16, 2022. This means that Tesla is being provided consideration under a federal contract to NOT take any action to enforce any provision of the forced arbitration agreement it entered into with Plaintiff as a condition of his employment on June 12, 2020.

3

KEMP & KEMP
ATTORNEYS AT LAW
7435 W. Azure Drive, Suite 110
LAS VEGAS, NEVADA 89130
Tel. (702) 258-1183 ♦ Fax (702) 258-6983

In breach of its presumed contractual obligations (presumed because Plaintiff does not currently have a copy of the contract in question, but the law requires the clause to be in the contract), Tesla is attempting through its Motion to Compel Arbitration (ECF No. 13) to enforce an arbitration agreement that it has promised and been compensated not to enforce.

## II. THE FRANKEN AMENDMENT PROHIBITS THE DEFENDANT FROM ENFORCING THE ALLEGED ARBITRATION AGREEMENT AS TO PLAINTIFF'S CLAIMS UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964.

Preliminarily, the Supreme Court has held that arbitration agreements are contracts subject to contract law. They are to be treated equally with other types of contracts, but not more favorably than any other kind of contract:

> But the FAA's "policy favoring arbitration" does not authorize federal courts to invent special, arbitration-preferring procedural rules. *Moses H. Cone,* 460 U.S. at 24, 103 S.Ct. 927. Our frequent use of that phrase connotes something different. "Th[e] policy," we have explained, "is merely an acknowledgment of the FAA's commitment to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate and to place such agreements upon the same footing as other contracts." *Granite Rock Co. v. Teamsters,* 561 U.S. 287, 302, 130 S.Ct. 2847, 177 L.Ed.2d 567 (2010) (internal quotation marks omitted). Or in another formulation: The policy is to make "arbitration agreements as enforceable as other contracts, but not more so." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 404, n. 12, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967). **_Accordingly, a court must hold a party to its arbitration contract just as the court would to any other kind. But a court may not devise novel rules to favor arbitration over litigation._** See *Dean Witter Reynolds Inc. v. Byrd,* 470 U.S. 213, 218-221, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985). If an ordinary procedural rule—whether of waiver or forfeiture or what-have-you— would counsel against enforcement of an arbitration contract, then so be it. The federal policy is about treating arbitration contracts like all others, not about fostering arbitration. See *ibid.*; *National Foundation for Cancer Research v. A. G. Edwards & Sons, Inc.,* 821 F.2d 772, 774 (C.A.D.C. 1987) ("The Supreme Court has made clear" that the FAA's policy "is based upon the enforcement of contract, rather than a preference for arbitration as an alternative dispute resolution mechanism").

*Morgan v. Sundance, Inc.,* 142 S. Ct. 1708, 1713 (2022) (Emphasis added).

4

The Defendant in this case is arguing for its arbitration agreement that it forced upon Plaintiff as a condition of being hired for his job to be give preferential treatment and to be enforced in spite of Defendant's clear violation of its defense contract and in defiance of the policy directions enacted in statute by Congress. The Motion to Compel arbitration filed by Defendant is an attempt to invoke the equitable powers of this court to order Plaintiff to arbitrate his claims. The motion seeks equitable relief, and therefore must comply with the requirements of equity and is subject to the doctrines of unclean hands, estoppel, and third-party beneficiary. When judged under these requirements, in light of the Franken Amendment, the presumed contractual agreements by Defendant not to try to enforce the arbitration agreement for a Title VII case, and the policy choices of Congress, the Defendant's motion must be denied.

### A. Federal Arbitration Act Background.

The Defendant relies on the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* (FAA) for authority. While that Act provides a Federal means to enforce arbitration, the Act specifically incorporates state contract law applicable to contracts generally including issues of formation and defenses. *Gonski v. Second Judicial Dist. Ct.*, 126 Nev. Adv. Opn. 51 at 8, 245 P.3d. 1164, 1169 (December 30, 2010) While there is a strong policy under both Federal and Nevada law in favor of arbitration of disputes, an arbitration clause is enforced *only after* a valid and enforceable agreement is found to exist. *Id.* Whether an arbitration clause is valid is governed by state law. *Lowden v. T-Mobile USA, Inc.*, 512 F.3d 1213, 1219 (9th Cir. 2008). However, state contract law that is specifically directed only at arbitration clauses is pre-empted by the FAA. *Id. citing Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681 (1996) A party seeking to enforce an arbitration agreement and compel arbitration bears the burden of establishing the

5

existence of a valid and enforceable agreement. *Gonski* at 8.

In this case, the Plaintiff disputes the existence of a valid and enforceable arbitration agreement. He contends that the Defendant is forbidden by federal law, and particularly contract law doctrines of unclean hands, estoppel, and third-party beneficiary, from forcing him to arbitrate his claims under Title VII pursuant to the Franken Amendment, discussed below.

The Federal Arbitration Act (FAA) Section 4 states in relevant part as follows:

> If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof. If no jury trial be demanded by the party alleged to be in default, or if the matter in dispute is within admiralty jurisdiction, the court shall hear and determine such issue. Where such an issue is raised, the party alleged to be in default may, except in cases of admiralty, on or before the return day of the notice of application, demand a jury trial of such issue, and upon such demand the court shall make an order referring the issue or issues to a jury in the manner provided by the Federal Rules of Civil Procedure, or may specially call a jury for that purpose. If the jury find that no agreement in writing for arbitration was made or that there is no default in proceeding thereunder, the proceeding shall be dismissed. If the jury find that an agreement for arbitration was made in writing and that there is a default in proceeding thereunder, the court shall make an order summarily directing the parties to proceed with the arbitration in accordance with the terms thereof.

The Court of Appeals has agreed that the matter of formation or the existence of any arbitration agreement must be submitted to a jury:

> Before a party to a lawsuit can be ordered to arbitrate and thus be deprived of a day in court, there should be an express, unequivocal agreement to that effect. If there is doubt as to whether such an agreement exists, the matter, upon a proper and timely demand, should be submitted to a jury. Only when there is no genuine issue of fact concerning the formation of the agreement should the court decide as a matter of law that the parties did or did not enter into such an agreement. The district court, when considering a motion to compel arbitration which is opposed on the ground that no agreement to arbitrate had been made between the parties, should give to the opposing party the benefit of all reasonable doubts and inferences that may arise.

*Three Valleys Mun. Water Dist. v. EF Hutton & Co.*, 925 F.2d 1136 (9th Cir)(*citing and quoting Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.,* 636 F.2d 51 (3d Cir.1980))

In this case there simply is no enforceable arbitration agreement as to Plaintiff's Title VII claims. To the extent that the Defendant disputes this factually,

6

there must be a jury trial to determine the facts pursuant to the above authority.

B. **The Franken Amendment and its Implementing Regulations Prohibit the Defendant from Enforcing the Forced Arbitration Agreement at Issue.**

Pursuant to "The Franken Amendment", Section 8116 of the Defense Appropriations Act of 2010 and DoD regulations promulgated thereunder, the Defendant is prohibited by federal law from 1) entering into any forced arbitration agreements requiring ANY of its employees to submit Title VII claims to arbitration, and 2) enforcing any previously existing arbitration agreements such as the 2020 agreement that was in effect when Tesla entered its defense contract at issue in this case:

> SEC. 8116. (a) None of the funds appropriated or otherwise made available by this Act may be expended for any Federal contract for an amount in excess of $1,000,000 that is awarded more than 60 days after the effective date of this Act, unless the contractor agrees not to:
> (1) enter into any agreement with any of its employees or independent contractors that requires, as a condition of employment, that the employee or independent contractor agree to resolve through arbitration any claim under title VII of the Civil Rights Act of 1964 or any tort related to or arising out of sexual assault or harassment, including assault and battery, intentional infliction of emotional distress, false imprisonment, or negligent hiring, supervision, or retention; or
> (2) **take any action to enforce any provision of an existing agreement with an employee or independent contractor that mandates that the employee or independent contractor resolve through arbitration any claim under title VII of the Civil Rights Act of 1964** or any tort related to or arising out of sexual assault or harassment, including assault and battery, intentional infliction of emotional distress, false imprisonment, or negligent hiring, supervision, or retention.

(Emphasis added)

The U.S. Department of Defense implementing regulations state, in relevant part, as follows:

> **SUBPART 222.74—RESTRICTIONS ON THE USE OF MANDATORY ARBITRATION AGREEMENTS**
> …
>
> **222.7402 Policy.**
>
> (a) Departments and agencies are prohibited from using funds appropriated or otherwise made available by the Fiscal Year 2010 Defense Appropriations Act (Pub. L. 111-118) or subsequent DoD appropriations acts for any contract (including task or delivery orders and bilateral modifications adding new work) in excess of $1 million, unless the contractor agrees not to—

7

      (1) Enter into any agreement with any of its employees or independent contractors that requires, as a condition of employment, that the employee or independent contractor agree to resolve through arbitration–

        (i) Any claim under title VII of the Civil Rights Act of 1964; or

        (ii) Any tort related to or arising out of sexual assault or harassment, including assault and battery, intentional infliction of emotional distress, false imprisonment, or negligent hiring, supervision, or retention; or

      **(2) Take any action to enforce any provision of an existing agreement with an employee or independent contractor that mandates that the employee or independent contractor resolve through arbitration–**

        **(i) Any claim under title VII of the Civil Rights Act of 1964**; or

        **(ii) Any tort related to or arising out of sexual assault or harassment, including assault and battery, intentional infliction of emotional distress, false imprisonment, or negligent hiring, supervision, or retention.**

 (b) No funds appropriated or otherwise made available by the Fiscal Year 2010 Defense Appropriations Act (Pub. L. 111-118) or subsequent DoD appropriations acts may be expended unless the contractor certifies that it requires each covered subcontractor to agree not to enter into, and not to take any action to enforce, any provision of any agreement, as described in paragraph (a) of this section, with respect to any employee or independent contractor performing work related to such subcontract.

http://www.acq.osd.mil/dpap/dars/dfars/html/current/222_74.htm  (Emphasis added)

The law could not be any clearer. The Defendant is prohibited from taking any action to seek to enforce the alleged 2020 arbitration agreement with respect to claims under Title VII. The Defendant has violated the law, and presumptively its contract, by bringing this motion. The Motion must be denied.

### C. Defendant Comes to Court with Unclean Hands Seeking Equitable Relief and Should be Estopped From Making a Mockery of its Contractual Obligations.

"The unclean hands doctrine derives from the equitable maxim that `he who comes into equity must come with clean hands.'" *Ellenburg v. Brockway, Inc.,* 763 F.2d 1091, 1097 (9th Cir.1985). "This maxim `closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper

8

> may have been the behavior of the defendant.'" *Id.,* quoting *Precision Inst. Mfg. Co. v. Automotive Maintenance Mach. Co.,* 324 U.S. 806, 814, 65 S.Ct. 993, 997, 89 L.Ed. 1381 (1945).
>
> Application of the unclean hands doctrine is left to the broad discretion of the trial court. Although there is "no clear-cut formula" for its application, this doctrine will bar a party from receiving an equitable remedy where that party has acted in bad faith with respect to the subject matter of its claims.

*Omega Industries, Inc. v. Raffaele*, 894 F.Supp. 1425, 1431 (D.Nev.1995)(Cleaned up)

The argument is simple and straightforward. Tesla was awarded and entered into a contract worth more than $1 million with the Department of Defense on September 16, 2022. This three-year contract to supply batteries to the Army and Navy is actually worth approximately $7.7 million. (Ex 1) Tesla entered into this defense contract after the June 12, 2020 arbitration agreement with Plaintiff. Thus, Tesla became bound, under the contract language required by the Franken Amendment, to "not take any action to enforce" the existing forced arbitration agreement that it had with Plaintiff. This provision was in effect when Plaintiff was discriminated against and fired in violation of Title VII of the Civil Rights Act of 1964 on May 2, 2023. The contract provision remains in effect through the end of the contract on September 15, 2025.

This contract is not merely something that the Department of Defense decided to impose. Congress enacted the Franken Amendment as a policy choice that defense contractors be precluded from requiring forced arbitration of their employees' or former employees' claims under Title VII. This is Congress's public policy choice. Tesla thumbs its nose at Congress's policy choice and its voluntary entering into a $7.7 million contract that required it to agree to refrain from enforcing the arbitration agreement at issue in this case. This is classic bad faith and unclean hands.

Contrary to Defendant's argument, the issue is not whether or not the Plaintiff entered into the arbitration agreement. It is not whether or not the arbitration

9

agreement is enforceable against the Plaintiff. The issue is that Tesla entered into a defense contract and agreed with the federal government not to enforce the arbitration agreement against Plaintiff on his Title VII case and received FEDERAL MONEY as consideration for that promise. Tesla now comes to court with these unclean hands asking this court for an equitable remedy of compelling Plaintiff into arbitration. Accordingly, it DOES NOT MATTER whether the arbitration agreement is or is not enforceable against Plaintiff, even on Title VII cases. The issue is that the court should deny the equitable remedy sought by the Defendant and refuse to enforce the arbitration agreement due to the unclean hands of Tesla. To do otherwise is to ignore and disrespect the public policy directives of the United States. It would be quite incongruent for a court to assist and participate with Tesla in its flouting of Congress's directive by supporting it in the breach of its contractual obligations to the U.S. Government. The doctrine of unclean hands applies in this case and the court should deny the motion.

### D. **Plaintiff is a Third-Party Beneficiary of the Department of Defense Contract.**

Defendant cites no binding appellate authority for its argument that Plaintiff cannot seek to enforce the contract between Tesla and the Department of Defense as a third-party beneficiary. The main case cited by Defendant for this proposition is *Lee v. Google, Inc.* 2018 Cal. Super. LEXIS 114049. A copy of this case is attached hereto as Exhibit 3. The case does not extensively analyze the third-party beneficiary issue, rather it merely states that the court was ignoring the third-party beneficiary argument because it was not sufficiently briefed or argued by the plaintiff in that case. Thus the Lee case is not only a non-binding unpublished California state trial court decision, it is also not persuasive on this issue in the least. Contract law is state common law, thus third-party beneficiary status and meaning is determined by

10

examining state law.

To have rights as a third party beneficiary, "there must clearly appear a promissory intent to benefit the third party, and ultimately it must be shown that the third party's reliance thereon is foreseeable." *Lipshie v. Tracy Inv. Co.,* 566 P.2d 819, 824-25 (Nev. 1977) (internal citation omitted). In order for Plaintiff to be a third-party beneficiary, the contract provision in question must be made for that person's benefit. *Olsen v. Iacometti,* 533 P.2d 1360, 1363 (Nev. 1975). "The fact that he might incidentally benefit by the performance of the agreement is insufficient." *Id.* "Whether an individual is an intended third-party beneficiary turns on the parties' intent, 'gleaned from reading the contract as a whole in light of circumstances under which it is entered.'" *Wright v. Incline Village Gen. Improvement Dist.,* 597 F. Supp. 2d 1191, 1205 (D. Nev. 2009) (quoting *Canfora v. Coast Hotels & Casinos, Inc.,* 121 P.3d 599, 605 (Nev. 2005)). In this case, the contract language required to be in Department of Defense contract under the Franken Amendment, as set forth above, is unquestionably intended to benefit Plaintiff as an employee of Tesla who is entering into the defense contract. This is not even a close question. The entire purpose of the contract language is to ensure that Tesla and other defense contractors subject to the law are not compelled into force pre-dispute arbitration agreements and that such pre-dispute arbitration agreements that predate the awarding of the defense contract are not enforced to compel employees into arbitration. Such employees are to have their day in court rather than be compelled into an arbitral forum. Based on the express required contract language it is clear that employees such as Plaintiff in this case would reasonably rely on the contract language and this is foreseeable. In this very case, Plaintiff was careful to note that Tesla appears to have defense contracts worth more than $1 million (ECF No. 1-1

Complaint at ¶11) and as a result the arbitration agreement is not to be enforced against him on his Title VII claims. There is no other reason to have this contractual provision in the defense contracts other than to benefit Plaintiff and other employees of defense contractors in permitting them to avoid forced arbitration and have their Title VII claims litigated in court rather than arbitration. The intent of requiring the contract language wherein Tesla presumably agreed to not enforce a forced pre-dispute arbitration agreement as to Title VII claims is to benefit defense contractor employees, including Plaintiff in this case. This is not an incidental benefit of the contract provision. It is the entire reason that the Franken Amendment was passed into law to require the contract provision in question. A reading of the required contract provision, presumably present in Tesla's Department of Defense contract(s), demonstrates that Plaintiff and other defense contractor employees were intended third-party beneficiaries of this contract provision. To view this or apply this requirement of the Franken Amendment in any other way is to make a mockery of Congress's public policy determination and intent.

Plaintiff is a third-party beneficiary of the Franken Amendment contract provisions and he can enforce that provision to defeat a motion to compel arbitration in this case. The Motion to Compel should be denied. If there is any question about the contract language being included in Tesla's defense contract(s), then the court should permit discovery to establish the facts and develop the record.

### III. THE MOTIONS SEEKING TO STAY THIS CASE WILL BE RENDERED MOOT BY THE DENIAL OF THE MOTION TO COMPEL ARBITRATION

Defendant's two motions seeking to stay the case pending outcome of the motion to compel arbitration and to stay the case pending the outcome of an arbitration are wholly derivative and dependent on the outcome of the court's

12

decision on whether to compel arbitration. If the court denies the motion to compel arbitration, as it should, then the motions seeking stays will be rendered moot. If the court grants the motion to compel arbitration, then the court will want to grant the stays as well and Plaintiff would have no opposition to the stays in that circumstance, while maintaining his objection and opposition to compelling arbitration.

## CONCLUSION

In accordance with the above, the Plaintiff respectfully opposes the Defendants' Motion to Compel Arbitration. There is no enforceable arbitration agreement as to the Plaintiff's claims under Title VII of the Civil Rights Act of 1964. Defendant is presumably contractually bound to not enforce any arbitration agreements related to Title VII and it comes to court seeking an equitable order to compel arbitration. This is classic unclean hands and the Defendant should be estopped from making a mockery of the law enacted by Congress and flouting its contractual obligations. Plaintiff, as an employee whom Congress directed should not be subjected to forced arbitration of Title VII disputes, is clearly a third-party beneficiary of the Department of Defense contract(s) that Defendant has entered into. The reading of the Franken Amendment advocated for by Defendant results in a frustration of Congressional purpose and leads to the absurd result of rendering the Franken Amendment a nullity and a joke. That is not how the law is supposed to work.

///
///
///
///

13

Plaintiff requests that the court deny the motion so that this case may proceed in the District Court.

DATED this 23rd day of April 2025

                                BY      /s/ James P. Kemp
                                JAMES P. KEMP, ESQ.
                                Nevada Bar #6375
                                7435 W. Azure Drive, Suite 110
                                Las Vegas, Nevada  89130
                                (702) 258-1183
                                Attorney for Plaintiff

## INDEX TO EXHIBITS

1. Department of Defense Contract Listings

2. Department of Defense Memo Re: Franken Amendment

3. *Lee v. Google, Inc.* 2018 Cal. Super. LEXIS 114049