# EXHIBIT 3

*Lee v. Google, Inc*. 2018 Cal. Super. LEXIS 114049

# EXHIBIT 3

⚠️ Caution
As of: April 20, 2025 11:27 PM Z

# *Lee v. Google, Inc.*

Superior Court of California, County of Santa Clara

September 14, 2018, Decided

18CV323651

**Reporter**
2018 Cal. Super. LEXIS 114049 *; 2018 WL 11409883

Lee v. Google, Inc.

## Core Terms

arbitration, unconscionability, compel arbitration, employees, arbitration agreement, declaration, agreement to arbitrate, Franken Amendment, harassment, contends, sexual harassment claim, co-worker, colleague

**Counsel:** **[*1]** No appearance.

No one called to contest the Tentative Ruling.

## Opinion

MINUTE ORDER

-Petition by Defendant Google, Inc. to Compel Arbitration or Stay Action (AMENDED moving papers filed on 5/18/18) (SECOND AMENDED moving papers filed 8/10/18)

No appearance.

No one called to contest the Tentative Ruling.

THE COURT ADOPTS THE TENTATIVE RULING AS FOLLOWS:

This is an employment action alleging disparate impact discrimination on behalf of a putative class of female Google employees who were required to arbitrate sexual harassment claims, in addition to several individual claims by the named plaintiff. Before the Court is Google's second amended petition to compel arbitration, which plaintiff opposes.

I. Factual and Procedural Background

According to the operative first amended class action complaint (FAC), plaintiff worked as a software engineer for Google for over seven years with excellent performance. (FAC, 1.) However, she was frequently subjected to sexual harassment by male co-workers who engaged in inappropriate behavior and made lewd remarks to her. (Id. at 2.) For example, male colleagues spiked her drinks with whiskey and laughed about it. (Id. at 21.) They shot nerf balls and darts at her almost **[*2]** every day. (Ibid.) One colleague sent plaintiff a text message asking if she would like a horizontal hug. (Ibid.) Another showed up at her apartment with a bottle of liquor and refused to leave. (Ibid.) Plaintiff was slapped in the face by an intoxicated male co-worker for no apparent reason, and was constantly ogled by men in the workplace. (Ibid.)

One particularly troubling incident occurred in January of 2016, when plaintiff found a male co-worker hiding under her desk. (FAC, 3, 22.) The colleague jumped up and shouted, You ll never know what I was doing! (Id. at 22.) The next day, he approached plaintiff and grabbed the name badge that hung around her neck, grazing her breasts. (Id. at 24.) Google's human resources department pressured plaintiff to file a report against this co-worker. (Id. at 3.) When plaintiff refused because she feared being labeled an informer, human

resources wrote her up and failed to take any remedial action to address the incident. (Ibid.) As plaintiff anticipated, over the next few weeks neither the co-worker in question nor anyone else in her group would approve the code she had written, and she did not receive appropriate feedback on her work. (Id. at **[*3]** 4.) Plaintiff eventually filed a report, but her claims were not thoroughly investigated and her colleagues inappropriate behavior continued unabated. (Id. at 30.)

Around the time of the January 2016 incident and at Google's suggestion, plaintiff took a medical leave to receive treatment for her mental health after working extreme hours for many years. (FAC, 5, 35.) Shortly after she returned, plaintiff was injured in a motor vehicle accident and requested time to attend physical therapy appointments. (Id. at 5.) She also took medication that made her sleep schedule erratic. (Id. at 38.) Google failed to grant her requests for accommodation or engage in an interactive process to accommodate her disability. (Id. at 5, 37-38.)

In February of 2016, Google terminated plaintiff for performance issues. (FAC, 6.) The termination came shortly after she asked for disability accommodations and was in violation of public policy. (Ibid.)

Plaintiff alleges that Google has a policy of forcing employees to sign an arbitration agreement mandating secret arbitration of all sexual harassment claims, an agreement she signed as a condition of her employment when she began working for Google in 2008. (FAC, **[*4]** 8.) Female Google employees are disparately impacted by this policy, as women bring the vast majority of sexual harassment claims and fare worse in arbitration than men. (Id. at 9.) Harassment victims also recover two-thirds less in arbitration than in litigation, which is a substantially greater reduction in recovery than the reduction observed with regard to other employment claims. (Ibid.) Finally, while a jury pool is likely to be equally divided by gender, arbitrators from Google's arbitration provider are disproportionately white men. (Id. at 51.)

Plaintiff's original complaint asserted only individual claims arising from the harassment and discrimination she alleges. On March 23, 2018, Google filed its original petition to compel arbitration, and plaintiff filed the FAC. The FAC newly asserted (1) an individual and class claim for disparate impact discrimination in violation of FEHA, as well as re-alleging plaintiffs individual claims for (2) hostile work environment in violation of FEHA, (3) gender discrimination in violation of FEHA, (4) failure to prevent sexual harassment in violation of FEHA, (5) retaliation in violation of FEHA, (6) disability discrimination in violation **[*5]** of FEHA, (7) failure to accommodate in violation of FEHA, (8) failure to engage in the interactive process in violation of FEHA, (9) wrongful termination in violation of public policy, (10) interference in violation of the Family and Medical Leave Act (FMLA), (11) retaliation in violation of FMLA, (12) interference in violation of the California Family Rights Act (CFRA), and (13) retaliation in violation of CRFA. Google filed an amended petition to compel arbitration addressed to the FAC.

According to Google's counsel, plaintiff propounded discovery requests addressed to the issue of whether Google is subject to the federal Franken Amendment, discussed below. The parties met and conferred on these requests, but were unable to come to agreement. Google subsequently filed its second amended petition to compel arbitration in order to address the Franken Amendment issue. That petition has now come on for hearing by the Court.

II. Legal Standard

Code of Civil Procedure section 1281.2 provides that a court must grant a petition to compel arbitration if it determines that an agreement to arbitrate exists, unless it determines that: (a) The right to compel arbitration has been waived by the petitioner; or (b) Grounds exist for the **[*6]** revocation of the agreement, among other exceptions. (Code Civ. Proc., 1281.2; see also 9 U.S.C. 3 [the court must grant a motion to compel arbitration if any suit is brought upon any issue referable to arbitration under an agreement for such arbitration ].)

The moving party must prove by a preponderance of evidence the existence of the arbitration agreement and that the dispute is covered by the agreement. (See Cruise v. Kroger Co. (2015) 233 Cal.App.4th 390, 396 [under both federal and state law, the threshold question presented by a petition to compel arbitration is whether there is an agreement to arbitrate ]; Rosenthal v. Great Western Fin I Securities Corp. (1996) 14 Cal.4th 394, 413 [moving party's burden is a preponderance of the evidence].) The burden then shifts to the resisting party to prove a ground for denial. (Rosenthal v. Great Western Fin I Securities Corp., supra, 14 Cal.4th at p. 413.)

If the court orders arbitration of a controversy which is an issue involved in [the] action or proceeding pending before [it], the court shall, upon motion of a party, stay the action or proceeding until an arbitration is had in accordance with the order to arbitrate or until such earlier time as the court specifies. (Code Civ. Proc., 1281.4.) If the issue which is the controversy subject to arbitration is severable, the stay may be with respect to that issue only. (Ibid.)

III. Evidentiary Issues

Google's request for judicial notice of the JAMS **[*7]** Employment Arbitration Rules & Procedures, which is unopposed, is GRANTED. (Enid. Code, 452, subd. (h).)

The Court will not rule on the objections to evidence filed with Google's reply papers, since they are unnecessary to its disposition of this motion.

IV. Existence and Validity of Arbitration Agreement

Here, while plaintiff does not appear to dispute Google's evidence that she signed an agreement containing an arbitration provision, she declares that she does not remember doing so. Plaintiff further contends that the Franken Amendment prohibits Google from compelling arbitration of sexual harassment claims, and that the agreement at issue is procedurally and substantively unconscionable.

A. Existence and Scope of Agreement to Arbitrate

Because arbitration is a contractual matter, a party who has not agreed to arbitrate a controversy cannot be compelled to do so. (Harris v. Tap Worldwide, LLC (2016) 248 Cal.App.4th 373, 380.) While there is a strong public policy favoring contractual arbitration, that policy does not extend to parties who have not agreed to arbitrate; absent a clear agreement to do so, courts will not infer that the right to a jury trial has been waived. (Esparza v. Sand & Sea, Inc. (2016) 2 Cal.App.5th 781, 787, 790.) An agreement to arbitrate may be express or implied so long as it is **[*8]** written. (Harris v. Tap Worldwide, LLC, supra, 248 Cal.App.4th at p. 383.)

Here, defendant submits a declaration by its former corporate recruiter, Adam Deer, who recruited plaintiff to Google. Mr. Deer declares that, at his direction, a colleague emailed and mailed offer paperwork to plaintiff, including the At Will Employment, Confidential Information, Invention Assignment and

Case 3:25-cv-00137-ART-CSD   Document 16-3   Filed 04/23/25   Page 5 of 7

Page 4 of 6
2018 Cal. Super. LEXIS 114049, *8

Arbitration Agreement attached to his declaration. The paperwork included an offer letter stating that employees are required to read the Agreement, which provides for arbitration of all disputes arising out of your employment, and to sign it on their first day of employment. Plaintiff never contacted Mr. Deer with any questions about or objections to the arbitration agreement, and signed and returned her offer letter.

Google also submits a declaration by its People Partner Emily Takashima Wilson. Ms. Wilson declares that she is familiar with the contents of plaintiffs personnel file and is a custodian of records for such files, which are kept and maintained in the normal course of Google's business. Plaintiff's file reflects that she accepted the Agreement with an electronic signature on December 8, 2006.

While plaintiff declares that she does not remember clicking through **[*9]** a Confidentiality Agreement or seeing any arbitration clause, she does not dispute the authenticity or admissibility of the evidence submitted by Google, which shows that she executed the Agreement. Google accordingly meets its burden to show there is an agreement to arbitrate.

Further, the Agreement covers this dispute. In capital letters, section 15 of the Agreement states that plaintiff agrees that any and all controversies, claims, or disputes whether brought on an individual, group, or class basis, arising out of, relating to, or resulting from my employment with the company or the termination of my employment with the company, including any breach of this agreement, shall be subject to binding arbitration under the arbitration rules set forth in *California Code of Civil Procedure section 1280 through 1294.2* pursuant to California law. The Agreement expressly includes claims under FEHA, the FMLA, and the CFRA.

The Agreement indicates that it also applies to any disputes that the company may have with me, and that any arbitration will be administered by Judicial Arbitration & Mediation Services, Inc. (JAMS) under its Employment Arbitration Rules & Procedures. The arbitrator shall award attorney fees and costs to the prevailing party, except **[*10]** as prohibited by law.

In light of the above, Google has satisfied its initial burden in connection with this motion.

B. The Franken Amendment

The Franken Amendment is embodied in various regulations addressing Department of Defense acquisitions. (*Ashford v. PricewaterhouseCoopers, LLP (D.S.C., July 18, 2018, No. 3:18-CV-904-CMC-SVH) 2018 WL 3454783, at *7, fn. 12*, citing *48 C.F.R. 222.7402*, *222.7403*.) Plaintiff contends that the Amendment prevents Google, as a defense contractor, from compelling the arbitration of sexual harassment claims. According to plaintiff, to avoid the need for discovery on this issue, Google agreed to withdraw any argument that it is not a defense contractor subject to the Franken Amendment.

Google contends that, even if it is subject to the Franken Amendment, the Amendment does not establish a defense to arbitration. This argument is consistent with the context and plain language of the Amendment, which provides that certain defense contractors must agree not to enter into any agreement requiring employees to arbitrate [a]ny claim under title VII of the Civil Rights Act of 1964 or [a]ny tort related to or arising out of sexual assault or harassment, including assault and battery, intentional infliction of emotional distress, false imprisonment, or negligent hiring, supervision, or retention, or to enforce **[*11]** any provision of an existing agreement that mandates the arbitration of such claims. (*48 C.F.R. 252.222-7006(b)(1)*.)

The amendment does not provide that arbitration provisions executed or enforced in violation of this promise are void, nor does it establish a remedy for violations in favor of employees. Virtually every court that has addressed the issue of whether the Franken Amendment provides a defense to arbitration has indicated that it does not, and this Court comes to the same conclusion.

Plaintiff responds that, even if the Amendment does not provide her with a direct remedy, she remains entitled to its protections as a third party beneficiary of Google's defense contract or contracts. However, she provides no authority or argument to support this conclusion, and as already discussed, the Franken Amendment does not reflect an intent to provide employees with a remedy for violations. (See *Martinez v. Socoma Companies, Inc. (1974) 11 Cal.3d 394, 402* [residents of East Los Angeles were not third party beneficiaries of contracts between corporations and the federal government for the training and employment of such persons; the contracts manifest no intent that the defendants pay damages to compensate plaintiffs or other members of the public for their nonperformance **[*12]** ].)

C. Unconscionability

In *Sanchez v. Valencia Holding Co., LLC (2015) 61 Cal.4th 899*, the California Supreme Court summarized the rules applicable to the unconscionability defense in a case involving an automobile sales contract. The Court described the general principles of the doctrine as follows:

One common formulation of unconscionability is that it refers to an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party. As that formulation implicitly recognizes, the doctrine of unconscionability has both a procedural and a substantive element, the former focusing on oppression or surprise due to unequal bargaining power, the latter on overly harsh and one-sided results. The prevailing view is that procedural and substantive unconscionability must both be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability. But they need not be present in the same degree. Essentially a sliding scale is invoked [where] the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable **[*13]** and vice versa.

(*Sanchez, supra, 61 Cal.4th at p. 910*, internal citations and quotations omitted, italics original.)

Plaintiff contends that the agreement at issue is both substantively and procedurally unconscionable. With respect to substantive unconscionability, she argues that the outcomes of sex-based discrimination claims and harassment claims are substantially worse when those claims are litigated in arbitration rather than in court, citing studies attached to her counsel's declaration. Because women bring the vast majority of such claims, these circumstances disproportionately impact women. As urged by Google, however, under the Federal Arbitration Act (FAA), arbitration provisions may not be invalidated by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue, even when presented in the guise of an otherwise valid general contract defense such as unconscionability. (*AT&T Mobility LLC v. Concepcion (2011) 563 U.S. 333, 339* (Concepcion); see also *McGill v. Citibank, N.A. (2017) 2 Cal.5th 945, 962* [discussing Concepcion].) Although characterized as an unconscionability argument, the issue raised by plaintiff is a

defense that applies only to arbitration and/or derives its meaning from the fact that an agreement to arbitrate is at issue. Such a defense is not permissible under **[\*14]** the FAA.

Plaintiff further contends that the arbitration agreement is substantively unconscionable because it provides for attorney fees to be awarded to the prevailing party except where prohibited by law. Plaintiff contends that employees cannot be expected to interpret such language, citing *Baker Pacific Corp. v. Suttles (1990) 220 Cal.App.3d 1148* (Baker Pacific). Baker Pacific, however, invalidated a release that contained no exception for fraud and intentional acts and thus violated California public policy. The appellate court rejected the defendant's argument that requiring employees to sign an invalid release was not contrary to law because the release would not be enforced by the courts, noting that [w]e cannot expect workers generally to be cognizant of judicial decisions concerning the interpretation of exculpatory provisions within releases. (*Id. at pp. 1154-1155*, italics added.) Here, the attorney fee provision on its face indicates that it will not apply in circumstances prohibited by law. The provision is not unconscionable. (See *Khraibut v. Chahal (N.D. Cal., Mar. 18, 2016, No. C15-04463 CRB) 2016 WL 1070662, at \*11* [while an arbitration agreement cannot purport to award attorney fees to a prevailing defendant where prohibited by law, a fee-shifting provision that required the arbitrator to adhere to California law in this regard **[\*15]** was not unconscionable].)

As plaintiff fails to identify any element of substantive unconscionability in connection with the arbitration agreement, her opposition must fail, even assuming some amount of procedural unconscionability existed because her employment contract was not negotiated. (See *Baltazar v. Forever 21, Inc. (2016) 62 Cal.4th 1237, 1244* [a finding of procedural unconscionability does not mean that a contract will not be enforced, but rather that courts will scrutinize the substantive terms of the contract to ensure they are not manifestly unfair or one-sided; adhesive employment contracts are scrutinized carefully, but to a lesser degree than contracts of adhesion that involve surprise or other sharp practices].)

The Court consequently finds that there is an enforceable agreement to arbitrate plaintiff's claims.

V. Conclusion and Order

Defendant's petition to compel arbitration is GRANTED. The action is stayed pending completion of arbitration.

The Court will prepare the order.

**End of Document**